108 F.3d 1377
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
REAL PROPERTY LOCATED AT 617 N. MAIN STREET, CELINA, MERCER
COUNTY, OHIO, Defendant-Appellee,
Carol Morgan, Claimant-Appellant,
Steve Morgan, Claimant.
 No. 95-3842.
 United States Court of Appeals, Sixth Circuit.
 March 7, 1997.
 
 Before: RYAN and BATCHELDER, Circuit Judges; and MILES, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Carol Morgan appeals the summary judgment for the government in this 21 U.S.C. § 881 civil forfeiture action. Morgan contends that the forfeiture violates both the Double Jeopardy Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment, and she also argues that the district court improperly relied on controverted material facts in granting the government summary judgment. For the reasons that follow, we affirm the district court's decision.
 
 I.
 
 2
 Morgan and her minor son, Steve Morgan, owned a home at 617 North Main Street, Celina, Ohio, as tenants in common. On March 22, 1991, agents of the Ohio Bureau of Criminal Identification (BCI) executed a search warrant at the premises. The officers seized a number of items in the home including $2,000 in cash, marked money from a separate drug investigation, and various pieces of drug paraphernalia. In an automobile on the premises, the officers found five tupperware containers containing residue of marijuana and bearing Morgan's fingerprints.
 
 
 3
 On July 22, 1991, confidential informant Randy Grimm phoned Morgan at her home and, in a taped conversation monitored by BCI agents, arranged to purchase some drugs later that day. Later, Grimm and Special Agent Greg Costas went to Morgan's home. Agent Costas stated in his affidavit that Morgan offered to sell, and did sell, him "two hits" of LSD for $10.00. Subsequently, Morgan pled guilty to violating Ohio Rev.Code Ann. § 2925.03(A)(1), Trafficking in Drugs, a third degree felony. Morgan was sentenced to two years in prison, received a $5,000 fine, and in separate state forfeiture proceedings, forfeited personal property worth approximately $13,000.
 
 
 4
 Morgan had been convicted in Ohio state court in 1983 for possession of 1,000 grams of marijuana and, in 1986, for possession of marijuana and Valium.
 
 
 5
 In November 1991, apparently before Morgan began serving her state prison sentence, Special Agent James Balcom of the Drug Enforcement Administration executed another search warrant at Morgan's residence and seized $14,450 in cash, a quantity of marijuana, and various other drug paraphernalia. During this search, a drug dog, trained to alert on the scent of drugs, "alerted" on a rocking chair, and a search of the chair seat revealed $10,000 of the $14,500 found in the home.
 
 
 6
 After Morgan's arrest, the BCI, the DEA, and the United States Attorney's office conducted investigations which confirmed Morgan's involvement in drug trafficking. Based on this investigation, the government brought an action for civil forfeiture to seize Morgan's residence at 617 North Main Street pursuant to 21 U.S.C. § 881(a)(7). The government subsequently amended its action to seize only Morgan's one-half interest in the residence; the government did not seek forfeiture of the interest of Morgan's minor son, Steve Morgan.
 
 
 7
 Originally, the government's evidence included sworn statements from confidential informant Randy Grimm, witness Charles Kist, witness Roy Carrol, and witness Charles Irish. In her response to the government's motion for summary judgment, Morgan controverted the statements of those witness through counter-affidavits. The government moved to stay its summary judgment motion in order to depose the controverted witnesses. Subsequently, the government resubmitted its motion for summary judgment.
 
 
 8
 The district court granted the government's motion for summary judgment notwithstanding the controverted nature of some of the government's evidence. The court held: "Although each fact standing alone may be insufficient, the aggregation of facts may suffice to meet the government's probable cause burden." Further, the district court announced that its decision was based on facts Morgan had not controverted, and listed those particular facts. Finally, the district court addressed Morgan's Eighth Amendment claim and analyzed the evidence under both a "proportionality test" and an "instrumentality test." Holding both of these tests satisfied, the court granted the government's motion. Morgan filed this timely appeal.
 
 II.
 
 9
 We address, first, Morgan's argument that the district court improperly relied on disputed facts in granting the government's summary judgment motion. Specifically, Morgan argues that there is a factual dispute in the record as to whether she used her residence as a base from which to sell drugs.
 
 
 10
 The government sought forfeiture under 21 U.S.C. § 881(a)(7). That statute reads:
 
 
 11
 (a) Subject Property.
 
 
 12
 The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 
 
 13
 ....
 
 
 14
 (7) All real property, including any right, title, and interest ... in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 15
 21 U.S.C. § 881(a)(7). Further, section 881(d) provides:
 
 
 16
 The provisions of law relating to the seizure ... for violation of the custom laws ... shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter[.]
 
 
 17
 21 U.S.C. § 881(d). The burden of proof, in a forfeiture proceeding, is therefore regulated by 19 U.S.C. § 1615. That statute requires, in pertinent part, that "the burden of proof shall lie upon [the] claimant ... Provided, That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court[.]" 19 U.S.C. § 1615. This circuit has held that once the government has demonstrated probable cause, the burden shifts to the defendant to prove, by a preponderance of the evidence, that the property was not used to commit or facilitate an offense under Title 21. United States v. Real Property Known and Numbered as 429 South Main Street, New Lexington, Ohio, 52 F.3d 1416, 1418 (6th Cir.1995).
 
 
 18
 As noted above, the government must first establish probable cause in a forfeiture action. Here, Morgan concedes the government had probable cause to seize her property. Therefore, Morgan has the burden of establishing, by a preponderance of the evidence, that her residence was not used to commit or facilitate an offense under Title 21. The district court examined Morgan's claims of controverted evidence and held that Morgan had failed to identify a material issue of fact for trial:
 
 
 19
 The undisputed facts reveal the following: that claimant sold two "hits" of LSD to a special agent and a confidential informant after being told she would wait for them at the defendant property; that claimant and Charles Kist drove to Kentucky and purchased six pounds of marijuana which was later divided up and placed in six tupperware containers, each containing one pound of marijuana; that, subsequent to the marijuana purchase, five tupperware containers were found at the defendant property which contained marijuana residue and claimant's fingerprint; that an identical tupperware container was found at the Kist residence; that $2,000.00 cash was found in the March, 1991 search of defendant property, some of which consisted of marked money previously used in an undercover purchase of marijuana from Mr. Kist; that Kist's had paid $400.00 of the $1,200.00 owed for a pound of marijuana purchased from claimant; that the defendant property was regularly used to set up drug deals and for collecting drug debts; that a scale, other drug paraphernalia, a small amount of marijuana, and $14,590.00 cash was found in the November, 1991 search of defendant property; and that claimant has a history of drug involvement, including a prior conviction for possession of approximately 1,000 grams of marijuana at a prior residence. The Court finds that the aggregation of these undisputed facts provides probable cause to believe that a substantial connection exists between the defendant property and the illegal exchange of contraband (i.e. probable cause to believe that LSD was sold at the defendant property, that the property was used to set up drug deals and collect drug debts, and that it was used to store quantities of marijuana for later distribution).
 
 
 20
 This court reviews a grant of summary judgment de novo. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991).
 
 
 21
 It is necessary, therefore, to examine several parts of the record of materials before the district court.
 
 
 22
 First, Morgan challenges the evidence of the sale of LSD at her home. She offers her own affidavit, a signed statement by the confidential informant Randy Grimm, prepared by Morgan, and her 1991 guilty plea to drug trafficking.
 
 
 23
 Federal Rule of Civil Procedure 56(e) requires that statements given in opposition to summary judgment be in the form of affidavits. Grimm's statement was not an affidavit, does not qualify under Rule 56(e), and was correctly excluded from consideration by the district court. After the government received Grimm's statement, he was deposed. His statements during the deposition do not controvert Agent Costas's testimony that the LSD sale took place. Additionally, Grimm specifically redacted portions of the statement Morgan prepared and that he signed.
 
 
 24
 Morgan also provided two affidavits of her own, one dated April 13, 1994, and another dated October 19, 1994. The first states that there was no transaction between Morgan and Agent Costas. This statement is conclusory and is inconsistent with Morgan's earlier admission that the LSD sale took place in her home. The second affidavit concerns the search of her home in November 1991. Morgan claims that the scales found in her home were for dieting and that the $14,590 was not drug money. Again, her statements are conclusory and she offers no additional facts to counter the testimony of Detective Patrick Elking that a drug dog "alerted" on $10,000 stored in a rocking chair at the defendant property.
 
 
 25
 There was considerable other inculpatory evidence that was not controverted. Pam Slife testified that she witnessed ten to twenty drug purchases at Morgan's residence over a period of several years. Morgan did not controvert Slife's affidavit. Nor did Morgan controvert the testimony of Kist who stated that he had paid her for drug debts at the defendant property. Kist also testified, without contradiction, that he and Morgan made a trip to Kentucky to purchase six pounds of marijuana; that the two subsequently divided that purchase into one-pound increments stored in separate plastic tupperware bowls; and that Morgan subsequently came to his house to take five of the six tupperware containers filled with marijuana. Finally, Morgan did not controvert the March 1991 search of Morgan's property that revealed five tupperware containers with marijuana residue and Morgan's fingerprints, as well as marked money used by Kist to pay for a drug debt owed to Morgan.
 
 
 26
 This court has held that a "Claimant's record of drug activity is a highly probative factor in the forfeiture calculus." United States v. $67,220 in United States Currency, 957 F.2d 280, 286 (6th Cir.1992). Thus, Morgan's prior drug conviction, as well as other drug transactions, were properly considered by the district court.
 
 
 27
 Morgan has failed to carry her burden of presenting credible evidence of a genuine issue of material fact. Accordingly, the district court did not err in granting the government's motion for summary judgment.
 
 III.
 
 28
 Morgan argues that the Double Jeopardy Clause of the Fifth Amendment protects her against forfeiture because she had been sentenced to two years imprisonment and given a $5,000 fine for the underlying offense. The recent Supreme Court decision in United States v. Ursery, 116 S.Ct. 2135 (1996), effectively disposes of this issue. There, the Court held:
 
 
 29
 [I]n rem civil forfeiture is a remedial civil sanction, distinct from potentially punitive in personam civil penalties such as fines, and does not constitute punishment under the Double Jeopardy Clause.
 
 
 30
 Id. at 2142. Accordingly, there was no violation of Morgan's Fifth Amendment rights.
 
 IV.
 
 31
 Morgan next argues that the forfeiture of her property violates the Excessive Fines Clause of the Eighth Amendment.
 
 
 32
 The Eighth Amendment to the United States Constitution mandates that no person shall be subject to excessive bail, excessive fines, or cruel and unusual punishment and has been applied to civil forfeitures. U.S. CONST.AMEND. VIII; Austin v. United States, 509 U.S. 602 (1993).
 
 
 33
 In Austin, the claimant sold two grams of cocaine to an undercover agent. A search of the claimant's mobile home and body shop revealed $5,000 in cash, a handgun, drug paraphernalia, and a small amount of marijuana and cocaine. Subsequently, Austin was charged under state law and pled guilty to possession of cocaine with intent to distribute. Following Austin's conviction, the government instituted a civil forfeiture action against the mobile home and body shop, pursuant to 21 U.S.C. § 881(a)(4) and (a)(7). Upon review, the Eighth Circuit upheld the district court's grant of summary judgment for the government declaring that it thought itself bound to do so by prior Supreme Court precedent. United States v. One Parcel of Property Located at 508 Depot Street, Garretson, Minnehaha County, S.D., 964 F.2d 814, 817 (8th Cir.1992).
 
 
 34
 The United States Supreme Court disagreed. Concerned with the possibility of government overreaching, the Court examined the history, purpose, and context of the Eighth Amendment and found that it applied to both civil and criminal proceedings. Id. at 607-10. In the civil context, the Court recognized that forfeiture was based on the legal fiction of "guilty property," and noted that historically, forfeiture served both as a punishment and as a remedial measure. Austin, 509 U.S. at 614-18. This duality, the Court held, was carried forward in 21 U.S.C. § 881(a)(4) and (a)(7). Id. at 619.
 
 
 35
 The Supreme Court left for the lower courts the task of developing a test to determine whether a forfeiture is constitutionally excessive. Id. at 622. Justice Scalia, writing in concurrence, stated:
 
 
 36
 [The] relevant inquiry for an excessive forfeiture under § 881 is the relationship of the property to the offense: Was it close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?
 
 
 37
 Id. at 628. The Court acknowledged that "the connection between the property and the offense may be relevant," but declined to limit the lower courts from considering other factors in the forfeiture analysis. Id. at 623 n. 15.
 
 
 38
 The Austin decision has resulted in three different methods of evaluating the constitutionality of a forfeiture. The first method adopts Justice Scalia's "instrumentality test," focusing on the use of the property in the illegal act and asserting that this is the only way to preserve the traditional fiction of the "guilty property." See, e.g., United States v. Chandler, 36 F.3d 358 (4th Cir.1994). The second method compares the severity of the forfeiture with the seriousness of the crime and applies a proportionality analysis. See United States v. One Parcel Property Located at 427 and 429 Hall Street, Montgomery, Montgomery County, Alabama, 74 F.3d 1165, 1170 (11th Cir.1996). The third method, used by a majority of circuits, employs a hybrid proportionality analysis that incorporates all or part of the instrumentality test. See United States v. One 1970 36.9' Columbia Sailing Boat, 91 F.3d 1053, 1057 (8th Cir.1996); United States v. Real Property Located in El Dorado County at 6380 Little Canyon Road, El Dorado, Cal., 59 F.3d 974, 983-85 (9th Cir.1995); United States v. Milbrand, 58 F.3d 841, 847 (2d Cir.1995); United States v. Premises Known as RR No. 1, Box 224, Dalton, Scott Tp. and North Abington Tp., Lackawanna County, Pa., 14 F.3d 864, 875 (3d Cir.1994).
 
 
 39
 This circuit has declined to adopt a "test" for forfeiture analysis. United States v. Certain Real Property Located at 11869 Westshore Drive, Putnam Tp., Livingston County, Mich. Together with all of its Fixtures, Improvements and Appurtenances, 70 F.3d 923, 930 (6th Cir.1995). Instead, we have recognized the "factually intensive nature" of forfeiture cases and we have approved the application of both tests, simultaneously and alternatively, in the same case. Westshore Drive, 70 F.3d at 930; 429 South Main Street, 52 F.3d at 1421-22.
 
 
 40
 Here, the district court examined the forfeiture of Morgan's property using both approaches, and found that the forfeiture was not an excessive fine. Having had the benefit of oral argument, and having conducted a de novo review of the record, we do not think that Morgan could "meet h[er] burden to produce evidence that this forfeiture was excessive under either a[n] 'instrumentality' or a 'proportionality' test." 429 South Main Street, 52 F.3d at 1422.
 
 
 41
 We therefore AFFIRM the district court's grant of summary judgment for the government.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation