**UNITED STATES of America, Plaintiff,**

v.

**5307 WEST 90TH STREET, OAK LAWN, ILLINOIS, Defendant,**

**Gary Taylor, Claimant.**

No. 95 C 0059.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 16, 1996.

Anthony James Masciopinto, U.S. Attys. Office, Chicago, IL, for U.S.

Barry S. Pechter, Michael D. Ettinger, Kim A. Grannan, Ettinger & Pechter, Ltd., Palos Hills, IL, Kim A. Grannan, for Gary Taylor.

Richard E. Burke, Wolfenson, Schouten & Burke, Palos Heights, IL, Kim A. Grannan, Ettinger & Pechter, Palos Hills, IL, for George Washington Sav. Bank.

## *MEMORANDUM OPINION AND ORDER*

ZAGEL, District Judge.

The United States filed a verified complaint for *in rem* civil forfeiture of real property commonly known as 5307 West 90th Street, Oak Lawn, Illinois under Title 21, United States Code § 881(a)(7). In this complaint, the Government alleged that probable cause existed to believe that the defendant property was used and intended to be used to facilitate cocaine distribution. Gary L. Taylor, the owner of this property, then filed a verified claim and answer to this forfeiture action, raising five affirmative defenses. George Washington Savings Bank also filed a claim of interest, and the Government does not contest its legitimacy. Now, the Government moves for summary judgment.

## Background

This case began to unfold in April 1994.[1] At that time, a confidential informant came to Detective Daniel Foley of the Oak Lawn Police Department and told him that he had purchased cocaine from Taylor at 5307 W. 90th St. in Chicago approximately fifteen times between February 1, 1994 and April 30, 1994. Subsequently, Foley supervised two controlled purchases of cocaine from Taylor. Both of these transactions occurred in the upstairs bedroom of Taylor's property. Several hours after the second transaction police executed a search warrant on the property. As a result of the search, police arrested Taylor and seized the following from defendant property: (1) 80 grams of cocaine, (2) $60,408.00 in United States currency, (3) 10 grams of cannabis, (4) an Ohaus scale and plastic bags, and (5) four shotgun shells. On May 9, 1994 the State of Illinois charged Taylor with unlawful possession of a controlled substance and unlawful possession of a controlled substance with the intent to deliver in violation of the Illinois Controlled Substance Act, 720 ILCS 570/100 et seq. Taylor is presently awaiting trial in Bridgeview, Illinois on these two charges.

## Analysis

A court grants summary judgment only "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether there are any genuine issues of material fact, the court will make all inferences in the light most favorable to the nonmovant. *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir. 1986).

In accordance with our local rules, the Government submitted a 12(M) statement to the court containing undisputed material facts. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party. Local Rule 12(N). No Rule 12(N) statement has been filed, and so the facts presented in the 12(M) statement are admitted.

The federal Controlled Substances Act provides for the forfeiture of property used or intended to be used to facilitate the commission of offenses involving illegal drugs punishable by more than one year in prison. 21 U.S.C. § 881(a)(7).[2]

In a forfeiture action, the government bears the burden of showing probable cause to believe that the defendant property was used to promote illegal activity. *United States v. All Assets & Equip. of W. Side Bldg. Corp.*, 58 F.3d 1181, 1188 (7th Cir. 1995). Probable cause means a reasonable ground for a belief of guilt, supported by less than prima facie proof but more than mere suspicion. *United States v. On Leong Chinese Merchants Ass'n Bldg.*, 918 F.2d 1289, 1292 (7th Cir.1990).

In support of its motion, the Government offers affidavits by Daniel J. Foley and Dennis Keenan, police detectives who participated in executing the search warrant at defendant property on May 6, 1994. According to the affidavits, the house served as the site for at least fifteen drug sales to one person, a police informant, between February 1, 1994 and April 30, 1994. Also, Detective Foley twice supervised controlled purchases of cocaine by the same informant on April 30, 1994 and on May 6, 1994. In addition, the police discovered claimant flushing a white powdery substance (that later tested positive as cocaine) down the toilet upon entering the property on May 6, 1994. During this search, the detectives recovered 80 grams of cocaine, 10 grams of marihuana, $60,408.00 in United States currency, and other drug paraphernalia. Upon this evidence, I conclude that there is probable cause to believe that the real property located at 5307 West 90th

1. These facts are derived from the Government's undisputed material facts in its 12(M) statement. Local Rule 12(M)(3).

2. The law provides for forfeiture of:
   All real property ... which is used, or intended to be used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.
   21 U.S.C. § 821(a)(7).

Street is connected to illegal drug activities. Indeed, claimant does not now directly challenge the Government's probable cause argument or claim for forfeiture.

### Testing Excessiveness Under the 8th Amendment

■ What Gary Taylor does is argue that summary judgment should be denied because forfeiture in this case would violate the Excessive Fines Clause of the Eighth Amendment for two reasons. First, Taylor claims that it would be constitutionally excessive to forfeit his property because he has equity in it worth approximately $110,000.00 while the drugs at issue were only worth $14,000.00. Second, Taylor claims that forfeiture would affect his two children who currently live at the property and leave them without a safe place to live.

■ The United States Supreme Court has held that *in rem* civil forfeitures are subject to the limitations of the Eighth Amendment's Excessive Fines Clause. *Austin v. United States,* 509 U.S. 602, 622, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993). The *Austin* court refused to establish a bright-line test for determining whether a forfeiture is "excessive," and left this determination to the discretion of the lower courts. *Id.* at 622–23, 113 S.Ct. at 2812–13 ("prudence dictates that we allow the lower courts to consider [what factors to consider in deciding whether a forfeiture is constitutionally 'excessive'] in the first instance.") Since the *Austin* decision, the Seventh Circuit has held that a forfeiture is not excessive unless the connection between the offense and the real property is "incidental and fortuitous." *United States v. Plescia,* 48 F.3d 1452, 1462 (7th Cir.1995) (citing *United States v. Real Estate Known as 916 Douglas Ave.,* 903 F.2d 490, 494 (7th Cir.1990)). If so, forfeiture may be denied as inappropriate and excessive; otherwise, forfeiture is constitutionally valid. The rationale underlying this standard is the express language of 21 U.S.C. § 881(a)(7) which allows for forfeiture of real property that is used "in any manner" to facilitate the eligible offenses. Accordingly, the Seventh Circuit has affirmed forfeitures even when the real property did not play a major role in the offense. For example, in

*Plescia* the court affirmed a forfeiture based primarily on one phone call to the claimant at his house to set up a large cocaine transaction and, in lesser part, on the fact that the claimant gave his phone number out to be used for drug-related business. In *916 Douglas Ave.* the court affirmed a forfeiture of real property based on two telephone calls to the claimant's home wherein he arranged a drug transaction. *916 Douglas Ave.,* 903 F.2d at 494.

Applying the "incidental and fortuitous" standard here, I find that the defendant property was not merely "incidental" to criminal activity. As discussed above, police detectives supervised two controlled purchases of cocaine at the property and seized a total of 90 grams of cocaine and marihuana there, too. Taking into account the fifteen drug sales between February and April, I conclude that the illegal activities at the defendant property were repeated and ongoing. Finally, the evidence recovered by the police during their search of the property indicate that claimant stored drugs there (80 grams of cocaine and 10 grams of marihuana) and typical tools of the drug trade, i.e. the scale and plastic bags. Above and beyond all this, police reported finding claimant flushing drugs down the toilet at the time of the search, indicating that an even greater quantity of drugs had been present at the property. I conclude that the defendant property was used in an intentional and repeated manner for transactions in illegal drugs, and therefore forfeiture of this property would not violate the Constitution's Excessive Fines Clause.

Admittedly, two of the claimant's allegations cause some hesitation. First, the value of claimant's equity in the defendant property (accepted, for this motion, as $110,000.00) substantially exceeds the street value of the drugs recovered from the property (accepted, for this motion, as $14,000.00 worth of cocaine and a small amount of money for ten grams of marihuana). But this discrepancy alone cannot serve to avoid forfeiture for several reasons. First, historically *in rem* forfeiture was based on the fiction that the property is guilty, and thus the issue is "not *how much* the confiscated property is worth,

but *whether* the confiscated property has a close enough relationship to the offense." *Austin,* 509 U.S. at 628, 113 S.Ct. at 2815 (Scalia, J., concurring) (citing 1 J. Bishop, Commentaries on Criminal Law §§ 816, 824, 825, 833 (7th ed. 1882), a prominent 19th-century treatise). The Seventh Circuit thus far has adhered to this principle. *See Plescia,* 48 F.3d at 1462. Second, current federal and state drug laws are not lenient, and Congress and the courts exact high penalties for violating them. Under federal law, a first-time offender (and Taylor will be a first time offender of a drug crime if he is convicted in state court) could face a fine of up to $1,000,000.00, 21 U.S.C. § 841(b)(1)(C). Even the federal sentencing guidelines would prescribe a maximum fine of roughly $175,-000.00 for the offense of possession with the intent to distribute the amount of cocaine at issue here.[3] Under Illinois law, claimant could be subject to a maximum fine of $200,-000.00. 720 ILCS 570/401(d).

The other thing that gives pause is claimant's allegation that his two young children live at the property and that they will lack a safe place to reside if it is confiscated. While this would concern anyone, claimant does not present any supporting evidence beyond this allegation that his children have no reasonable alternative home available to them, in the care of their mother at some other location, for example. Also, I question whether this property has provided a safe residence for the children thus far where drugs appear to have been sold there on a regular basis. In sum, often times claimants will have family members who will be negatively affected by the forfeiture of the claimant's house, and so this fact alone cannot serve to preclude the penalty applicable here. Unfortunately, under current law everyone runs the risk of losing a home when one member of the household chooses to deal drugs from within.

Finally, the claimant urges me to apply a proportionality analysis in this case and thereby find that forfeiture would be constitutionally excessive. However, I am constrained from doing so for two reasons: (1) the Seventh Circuit's "incidental and fortuitous" standard is akin to an "instrumentality" test that focusses on whether the real property was an instrument of the criminal activity to the general exclusion of other factors, *see United States v. Chandler,* 36 F.3d 358, 365 (4th Cir.1994) (explaining the "instrumentality" test), and (2) the facts of this case show a strong nexus between the defendant property and the claimant's illegal drug activities.[4] In addition, claimant's exposure to fines for the offenses here could quite easily equal or exceed the equity he possesses in his property.

## CONCLUSION

For the foregoing reasons, I hereby order forfeiture of the defendant property located

---

3. I arrived at this estimate of fine exposure based on the federal sentencing guidelines. I made inferences in claimant's favor by not making any possible upward adjustments to his base offense level based on drug quantities that might be attributed to them. If, hypothetically, he were to be convicted of violating 21 U.S.C. § 841(a)(1) in connection with at least 50 and less than 100 grams of cocaine, the federal sentencing guidelines would assign him a base offense level of 16. This is commensurate with a fine of $175,000.00. Even if the level were reduced by 2 for acceptance of responsibility down to 14, claimant would be subject to a fine of $85,000.00—not much less than the equity value he claims to hold in his property.

4. Also, courts in this circuit, unlike a majority of the other federal circuits that have addressed the issue, have never endorsed the application of a proportionality test. *See Plescia,* 48 F.3d at 1462 (court applied the "incidental and fortuitous" test); *Douglas,* 903 F.2d at 494 ("our inquiry is *limited to* " applying the incidental and fortuitous test) (emphasis added). Rather, these courts have mentioned proportionality analysis in the course of rejecting claimants' objections to forfeiture and ordering or affirming it. *Cf. United States v. 829 Calle de Madero,* 100 F.3d 734, 738 (10th Cir.1996) (applying proportionality analysis to forfeiture subject to an Excessive Fines Clause challenge); *United States v. 427 & 429 Hall St.,* 74 F.3d 1165, 1170–72 (11th Cir.1996) (same); *United States v. Bieri,* 68 F.3d 232, 236 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1876, 135 L.Ed.2d 172 (1996) (same); *United States v. RR # 1, Box 224,* 14 F.3d 864, 875 (3d Cir.1994) (same); *United States v. 11869 Westshore Dr.,* 70 F.3d 923, 930 (6th Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 57, 136 L.Ed.2d 20 (1996) (applying both the instrumentality and the proportionality tests); *United States v. 143–147 East 23rd St.,* 77 F.3d 648, 658 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 67, 136 L.Ed.2d 28 (1996) (applying hybrid instrumentality-proportionality test); *United States v. 6380 Little Canyon Rd.,* 59 F.3d 974, 985 (9th Cir. 1995) (same).

at 5307 W. 90th Street, Chicago, Illinois. George Washington Savings Bank is entitled to recoup the value of its interest in this property, and so the Government is hereby ordered to ensure that the bank be given an opportunity to secure the value of its interest in the property.